UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LONNIE ENGLISH,

    *Plaintiff*,

v.

WILLIAMS, *Correctional Officer*,
ORSI, *Mr., Correctional Officer,*

    *Defendants*.
_____/

CASE NO.   08-CV-11171
                08-CV-11428

CONSOLIDATED CASES

DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE CHARLES E. BINDER

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
(Doc. 37)[1]

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED** and the case be dismissed in its entirety.[2]

## II.   REPORT

### A.   Introduction

By order of United States District Judge Avern Cohn, this *pro se* civil rights case was referred to the Magistrate Judge Virginia M. Morgan for pretrial case management on April 2, 2008. (Doc. 5.) On September 16, 2009, Magistrate Judge Morgan recused herself and the case was reassigned to the undersigned magistrate judge. (Doc. 51.)

---

[1]All docket numbers refer to the docket of the lead case, 08-CV-11171.

[2]This report does not address Defendants' request for reimbursement of fees and costs under Rule 37 of the Federal Rules of Civil Procedure since that is a matter best left to the district judge's discretion after consideration of the substance of this Report and Recommendation.

Plaintiff's complaint against Defendant Williams (case number 08-CV-11171) was filed on March 19, 2008. (Compl., Doc. 1.) On April 21, 2008, the case was consolidated with case number 08-CV-11428 and that case was administratively closed. (Doc. 7.) The complaint in case number 08-CV-11428 named Defendant Orsi as the sole defendant. The factual allegations are the same in both cases.

Although a motion to amend the complaint was granted in part on December 31, 2008, which gave Plaintiff until January 30, 2009, to file an amended complaint (Doc. 19), no amended complaint was ever filed.

Defendants filed the instant motion to dismiss or for summary judgment on June 17, 2009 (Doc. 37) and supplemented their motion and brief on July 13, 2009. (Doc. 44.) Plaintiff responded to the motion on August 7, 2009. (Doc. 49.) Defendants filed a reply on August 17, 2009. (Doc. 50.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

Plaintiff's claims arise from an incident that occurred on January 27, 2007, while Plaintiff was incarcerated in the Washtenaw County Jail. (Compl., Doc. 1.) Plaintiff states:

> I got into a fight and when the officers came in the cell I placed both hands behind me and I was handcuffed, the officers struck me down, elbowed me in the neck and shocked me unconscious, they tighten [sic] the handcuffs so tight they cut in to my wrist. My left hand is still in pain because when I hold the newspaper or book in my left hand a shock occurs and a sharpe [sic] pain goes through my enter [sic] body and I still have pain in my neck. I have pain in both of my shoulders[. T]he Deputy officers lifted my arms so high in the air behind my back and I was taken to medical. The Deputies lifted me off my feet and body slammed me face first into the cement floor, I was naked and bleeding excessively without medical attention because I was denied treatment.

(Doc. 1 at 3.)

2

Stemming from the incident described above, Plaintiff was charged in the Washtenaw County Circuit Court on February 16, 2007, with assault of a prison employee, MICH. COMP. LAWS § 750.197c, and assault or assault and battery, MICH. COMP. LAWS § 750.81(1). (Doc. 37, Ex. 6 at 1; Ex. 7 at 2.) Plaintiff pleaded guilty to assault or a prison employee and was sentenced on April 17, 2007. (Doc. 37, Ex. 6 at 2; Ex. 7 at 4, 6.)

### C.     Motion Standards

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

3

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination were insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments

and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Thus, the police report that is central to the complaint and is attached to the instant motion and Plaintiff's deposition may be considered as fleshing out the allegations in the complaint and may therefore be referred to without converting the motion to a summary judgment motion. *See Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

  **D.** **Motion to Dismiss**

  **1.** *Heck v. Humphrey*

Defendants contend that Plaintiff's claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Doc. 37 at 9-11.) Generally, suits challenging the fact or duration of confinement must be brought under the habeas corpus statutes and not § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 489-90, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). In *Heck v. Humphrey*, however, the U.S. Supreme Court considered whether

this rule should be modified where a prisoner does not seek release but instead seeks an award of monetary damages. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. This "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

In the instant case, Plaintiff pleaded guilty to and was thus convicted of assault of a prison or jail employee, i.e. Defendant Orsi. (Doc. 37, Ex. 6 at 1; Ex. 7 at 4, 6.) Plaintiff's current claim is that Defendants used constitutionally impermissible force when they broke up the fight Plaintiff was having with another inmate and restrained Plaintiff. (Doc. 1 at 3.) If the crime of assaulting a prison employee can be committed even if the corrections officers used excessive force, then a civil rights claim that the officers used excessive force would not necessarily undermine the criminal conviction and the civil rights claim would not be barred by *Heck*. On the other hand, if the officers' use of excessive force would allow an inmate to avoid conviction if he acted in self-defense, then a civil rights claim that the officers used excessive force would undermine the criminal conviction and the civil rights claim would be barred by *Heck*. I suggest that principles

6

of state law which underlie Plaintiff's conviction effectively answer this question, and determine both the application of *Heck* to these facts and the outcome of Defendants' motion.

Michigan law provides as follows:

> A person lawfully imprisoned in a jail [or] other place of confinement . . . who, . . . through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement . . . knowing the person to be an employee . . . is guilty of a felony . . . .

MICH. COMP. LAWS § 750.197c. Self-defense is a complete defense to conviction under this statute and may be argued where the defendant is acting in response to an assault by a prison employee. *See People v. Thompson*, No. 276151, 2008 WL 3413048, at *1-*2 (Mich. Ct. App. Aug. 12, 2008) (in response to charge of assaulting a prison employee, a "claim of self-defense necessarily requires that the defendant act in response to an assault . . . that defendant acted intentionally, but that circumstances justified the action . . . . The defense is generally not available if the defendant was the aggressor or used excessive force."); *People v. Latham*, No. 263851, 2006 WL 3733216, at *2 (Mich. Ct. App. Dec. 19, 2006) (jury instruction properly "demonstrated that if assaulted by corrections personnel, a defendant could permissibly act in self-defense . . . ."); *People v. Wigfall*, No. 244813, 2004 WL 258197, at *1 (Mich. Ct. App. Feb. 12, 2004) (self-defense instruction not needed where defendant disobeyed commands to enter cell and assumed an aggressive posture toward officers because officers were entitled to use reasonable means to defend themselves and preserve order and where defendant was the initial aggressor); *People v. Hanna*, No. 242981, 2003 WL 22399582, at *1 (Mich. Ct. App. Oct. 21, 2003) (defendant not entitled to self-defense instruction where defendant denied assaulting corrections officer).[3] By pleading guilty to

---

[3] In addition, under MICH. COMP. LAWS § 800.41, corrections officers are "entitled to use all suitable means to defend themselves, enforce discipline, and secure a prisoner, where the prisoner assaults or batters another or resists or disobeys a lawful command." *See Thompson* at *2.

assaulting a prison employee, Plaintiff waived any assertion of self-defense, and thus necessarily conceded both that he was not being assaulted by either of the defendants and that he was not defending himself when he assaulted Defendant Orsi.

I therefore suggest that the allegations in Plaintiff's complaint seek to undermine the validity of his conviction and thus are barred by *Heck*. I further suggest that Defendants' motion be granted and the case dismissed on this ground.

**2. Alternative Analysis**

Should the court find that the claim is not barred by *Heck*, I suggest in the alternative that Defendants' motion should be granted because the officers are entitled to qualified immunity. (Doc. 37 at 11-13.)

**a. Qualified Immunity and Summary Judgment Standards**

The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; trial judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### b.     Whether a Constitutional Violation Occurred

Since "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' [i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Although Plaintiff does not specify in his complaint which

constitutional right he claims was violated, his response clarifies that he alleges a claim under the Eighth and Fourteenth Amendments. (Doc. 49 at 1.)[4]

"Because the Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citations omitted). As to the Fourteenth Amendment, "state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (citations omitted). The complaint does not specify whether Plaintiff was a pretrial or post-trial detainee at the time this cause of action arose; however, this distinction is not important since the analysis is the same under either Amendment.

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his medical needs or his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

> A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, sufficiently serious [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the unnecessary and wanton infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with deliberate indifference.

*Davis v. Brian*, No. 98-1810, 1999 WL 503522, at *3 (6th Cir. July 9, 1999) (unpublished) (internal citations and quotations omitted). "Obduracy or wantonness, not inadvertence or good

---

[4] I further note that since the alleged excessive force occurred while in jail and not during the course of an arrest or investigatory stop, the Fourth Amendment would not be implicated. *See Graham*, 490 U.S. at 394.

11

faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the context of prison discipline, Plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Toward that end, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6.

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470 U.S. at 320.) The factors to be analyzed when considering the conduct of prison officials are: (1) the need for the application of force; (2) the relationship between the need for force and the amount used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; and (5) the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. This analysis must be made in harmony with the Supreme Court's admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley*, 475 U.S. at 321-22. Physical

restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, at *1 (6th Cir. Feb. 15, 1996).

Plaintiff's complaint alleges hand and wrist pain from being handcuffed too tightly, pain in his neck from being "elbowed" in the neck when he was taken down, and pain in his shoulders due to having his arms lifted high in the air by Defendants. (Doc. 1 at 3.) In response to an interrogatory asking Plaintiff to provide any medical history after the date of the complained of incident, Plaintiff stated:

> I went to see the Doctor at Washtenaw County Jail on the Date of 3/8/2007, because I was in F-Blk the Officers wouldn't give my any medical [k]ites and I had a[n] examination physical and a[n] eye examination then I was referred to a[n] eye specialist at the St. Joseph Hospital in Ann Arbor . . .

(Doc. 44, Ex. 7 at 3.) Plaintiff's medical kite dated February 1, 2007, indicates that he complained of blurry vision in his right eye at that time. (Doc. 44 at Ex. 9.) The doctor from the Kellogg Eye Center indicated in his report that Plaintiff has a posterior vitreous detachment (PVD) in one eye and cataracts in both eyes. (Doc. 44 at Ex. 10.)

Plaintiff's complaint alleges that an excess of force was used to accomplish the purpose of restraining and handcuffing him, i.e., that he was elbowed while being taken down and cuffed too tightly after having been taken down. Even Plaintiff's complaint does not allege that he was kicked or otherwise struck outside of the restraining process. I therefore suggest that Plaintiff's complaint does not state that Defendants acted outside of their justified penological purpose. In addition, Plaintiff's complaint does not allege any trauma to the eye during the incident and the only medical issues raised by Plaintiff or addressed by medical staff were regarding PVD and

13

cataracts.[5]  I therefore suggest that Plaintiff has alleged an essentially *de minimis* injury that is not of constitutional magnitude.  *See Jones Bey, supra* (*de minimus* injuries do not state a constitutional violation).  I further suggest that Plaintiff has failed to sustain or support even his *de minimis* injury averments through the discovery process since he indicates that any medical issues occurring after the January 27, 2007, incident are completely unrelated to that incident.

Accordingly, I suggest that no genuine issue of material fact exists and therefore Defendants' motion for summary judgment regarding the alleged Eighth Amendment violation should be granted.

### c.     Whether the Right was Clearly Established

Since I suggest that no constitutional violation occurred, if the Court were to decide that one did occur, I would suggest that the right was not clearly established and that the Defendants would be entitled to qualified immunity.

### E.     Conclusion

For all the reasons stated above, I suggest that Defendants' motion be granted and the case dismissed in its entirety.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932

---

[5]Even if Plaintiff had alleged the eye condition was somehow related to the complained of incident, Defendants have submitted medical information which shows that both PVD and cataracts are conditions that develop with age and are not caused by trauma. (Doc. 44, Ex. 11.)

14

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

|  |  |
|---|---|
|  | s/ *Charles E Binder* |
|  | CHARLES E. BINDER |
| Dated: October 1, 2009 | United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, served upon counsel of record via the Court's ECF System, and served on the following non-ECF participant via the United States Postal Service: Lonnie English, #168605, Kinross Correctional Facility, 16770 S. Watertower Drive, Kincheloe, MI 49785.

| | |
|---|---|
| Date:  October 1, 2009 | By      s/Patricia T. Morris |
| | Law Clerk to Magistrate Judge Binder |